

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:                    Opinion No. 0-782

Re: In instances under Article 7047,
R.C.S. 1925, where the State of
Texas levies an annual occupation
tax at a certain rate, due and
payable in each and every county
in which the occupation is
pursued, in what amount and manner
should the County tax of such
occupation be levied and collected?

In answering the above question embodied in your letter of May
8, 1939, we quote from said letter as follows:

"Chapter 212, Acts of the Regular Session of the 42nd Legisla-
ture, provides that all occupation taxes are payable in advance
unless otherwise provided by law, and establishes an uniform
expiration date as of December 31st of each year, thereby
making it necessary to pro rate the collection of such taxes
from the time the occupation commences to the end of the
calendar year.

"In opinions written by Grady Chandler January 5, 1928,
Clark C. Wren June 29, 1936, John McKay February 27, 1937,
and a joint opinion by John McKay and J. H. Broadhurst
March 23, 1937, it was held that Article 7047, R.C.S., must
be read in connection with Article 7048, R.C.S., the last
named Article providing that State occupation taxes cannot be
collected for less than one quarter. These opinions conse-
quently hold that the occupation tax must be collected from
the beginning of the calendar quarter in which such business
commences to the end of the calendar year and not from the day
the occupation commences.

"We have recently had several requests from County Tax Assessor
Collectors for a ruling as to the proper procedure in collecting
the counties' part of such occupation taxes.

"The Constitution of Texas provides that counties and cities may levy and collect one-half the amount of the occupation taxes levied by the State. The county commissioners of the various counties usually enact a blanket levy imposing a county tax one-half of the State tax upon all occupations on which the State has imposed a tax.

The first question, however, must pertain to the State tax. The Statutes provide that some of the State occupation taxes are due and payable in each county where the occupation is pursued. As an example the Occupation Tax on carnivals (Art. 7047, Subdivision 25b) reads as follows:

"(b) Carnivals -- From every carnival, an annual tax of One Hundred Dollars ($100.00), which State tax shall be due and payable in each and every county in which such carnival shows or exhibits.'

"A carnival rarely ever shows longer than a week or two weeks in any one county, yet if the tax is to be prorated (as provided in Subdivision 42, Art. 7047), it must pay $100.00 per county in the counties it shows during January, February and March, but in April, May and June, it would only be required to pay $75.00 for each county in which it performs. In the next quarter the tax would be $50.00 per county and in the last quarter $25.00 per county. It appears that the Legislature merely intended to establish a uniform expiration date for occupation taxes but in a case of this kind, it has the effect of reducing the tax.

"The first question therefore is as follows:

"Where the Statute fixes an annual tax and then provides it is due and payable in each and every county where the occupation is pursued, was it the intent of the Legislature that the full amount of the State annual tax be collected in each county, or was it intended that the tax be prorated from the quarter the occupation commences in each county to the end of the calendar year?

"If you hold that the State tax on a carnival and other occupations payable in each county separately is not subject to proration, will the counties collect one-half of the full levy, or will such counties be compelled to collect for one quarter only as provided in Article 7048, R.C.S.?

"Conversely, if you hold that the State tax on such carnival or other occupations which pay separately in each county may be prorated as other occupation taxes, will the counties collect

one-fourth of one-half of the amount levied for a full year, or will such counties collect one-fourth of one-half of the pro-rated amount the State collects.  In other words, let us say the occupation commences in July and the State collects $50.00 the pro rata part of the last two quarters of the calendar year.  Will the counties collect one-fourth of one-half of $50.00 or one-fourth of one-half of $100.00?"

We find no authorities to assist us in arriving at a correct interpretation of the tax measure involved in your inquiry, but from the opinions adverted to in your letter and the pertinent constitutional and statutory provisions, we are of the opinion that it was not the intent of the Legislature that the full amount of the State annual occupation tax be collected in each county where the occupation is pursued, regardless of the time during the calendar year when the occupation commenced, but, on the contrary, such tax should be prorated from the quarter the occupation actually commences in each county to the end of the calendar year. This has been the consistent ruling of this Department in the opinions cited by you where the occupation tax is levied by Article 7047, Revised Civil Statutes, annually, on a state-wide basis only, and we find nothing in this tax statute or any of the other pertinent statutes which would disallow the benefits of a pro-ration on the basis of the time the occupation was actually pursued during any calendar year, in those instances under Article 7047, Revised Civil Statutes, where a more burdensome occupation tax is levied by the State, due and payable in each and every county where such occupation is followed.

Our answer to your first question renders unnecessary an answer to your second, and we accordingly pass to a consideration of your third and last question, involving the amount and manner of the collection by counties of occupation taxes in those instances where the annual occuaption tax levied by Article 7047, Revised Civil Statutes, is due and payable in each county on a pro rata basis from the beginning of any quarter in which the occupation commences to the end of the calendar year.

In this connection, Section 1, Article 8, Constitution of Texas provides, in part, as follows:

"And provided further that the occupation tax levied by any county, city or town for any year on persons or corporations pursuing any profession or business, shall not exceed one-half of the tax levied by the State for the same period on such profession or business."

From the foregoing constitutional limitation upon the amount of occupation taxes which may be levied by the counties of this State, it is our conclusion that the amount of the annual occupation tax <u>levied</u> by Article 7047, Revised Civil Statutes, rather than the amount actually <u>collected</u> by the State from any given occupation, is determinative of the amount of occupation tax which may be constitutionally levied upon such occupation by any county. Using subdivison 25b, Article 7047, Revised Civil Statutes, mentioned in your letter, as an illustration of this point, we believe that the amount of county occupation tax fixed and allowed by the Constitution of Texas would be one-half of the annual tax rate of $100.00 on carnivals, rather than one-half of such amount as might actually be collected from any given carnival in any certain year by reason of its exhibition in several counties of Texas. The latter figure would be variable with each year and each carnival, and the commissioners' court, in levying the county occupation tax, would be unable therefrom to levy such tax at the beginning of the calendar year in any definite sum. For these reasons we believe the basic annual tax fixed by the Legislature in the various subdivisions of Article 7047, Revised Civil Statutes, is controlling in calculating the allowable county occupation tax rate on any particular occupation.

Inasmuch as, under the statutes governing the collection of county occupation taxes, and the opinions of this Department construing same, such taxes may be paid quarterly basis, it would follow, from the foregoing, that counties would, on a quarterly basis, collect an occupation tax of one-fourth of one-half of the amount levied by the State for a full year on any given occupation. Using the illustration given by you in your last question, and assuming that a certain occupation commences in July and the State of Texas collects $50.00, the pro rata part of annual tax of $100.00 for the last two quarters of the calendar year, it is our answer that the county occupation tax upon the same occupation for one quarter of the calendar year would be one-fourth of one-half of $100.00 rather than one-fourth of one-half of $50.00.

Trusting that the foregoing fully answers your inquiries, we are

Yours very truly
ATTORNEY GENERAL OF TEXAS
s/ Pat M. Neff, Jr.
By

Pat M. Neff, Jr.
Assistant

PMN:N/cg

APPROVED JUNE 23, 1939
S. Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee
By BW, Chairman